# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| B AND D PLUMBING COMPANY, INC.; QUALITY PLUMBING, INC.; THE PAYNE COMPANY, INC.; LAFLEUR'S PLUMBING, L.L.C.; BONNECAZE PLUMBING, L.L.C.; M&M PLUMBING COMPANY, INC.; AND KENT'S PLUMBING, INC. | CIVIL NUMBER |
| | 18-38-SDD-RLB |
| VERSUS | |
| JAMES C. FINLEY, KELLY CRAFT, RICKEY FABRA, TERRY SMITH, RANDALL MCGEE, CARL BOURGEOIS, LARRY REILING, SR., AND GERALD LACOUR, ALL IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE STATE PLUMBING BOARD OF LOUISIANA | |

## **RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, the named members of the State Plumbing Board of Louisiana ("Board"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs, the named plumbing contractors ("Plumbing Contractors"), have filed an *Opposition*[2] to this motion, to which the Board filed a *Reply*.[3] For the reasons which follow, the Court finds that the Board's motion should be granted pursuant to Rule 12(b)(1) for lack of jurisdiction because Plumbing Contractors lack standing to bring this suit.

Because the Court finds that Plumbing Contractors have failed to sufficiently plead

---

[1] Rec. Doc. No. 18.
[2] Rec. Doc. No. 28.
[3] Rec. Doc. No. 32.
49589

facts which give rise to Article III standing, the Court does not reach the Board's motion pursuant to Rule 12(b)(6) in this ruling.

I.  BACKGROUND

Plaintiffs are plumbing contractors, working in the State of Louisiana, who are licensed by the State Plumbing Board of Louisiana and the Louisiana State Licensing Board for Contractors.[4]  Plumbing Contractors employ individuals who are training to become journeyman plumbers.[5]  Plumbing Contractors claim that they are "directly impacted" by mandatory indentured apprenticeship requirements "enforced by" the Board.[6]  The Board requires that all apprentice plumbers be under the "direct, constant, on-the-job supervision of a licensed journeyman plumber[7] and be indentured in a Workforce Commission approved apprenticeship program.[8]  Plumbing Contractors claim that the requirements of the apprenticeship program have "significant implications"[9] on Plaintiffs and are "detrimental to the growth of the industry"[10] because the requirements "essentially close the industry to those who do not have access to approved apprenticeship programs."[11]

The apprenticeship program requirements at issue are set forth at LSA R.S. 37:1377.  Plumbing Contractors claim that these Louisiana statutory requirements are preempted by federal law, specifically the preemption clause found at 29 U.S.C. § 1144 (a) within the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

---

[4] Rec. Doc. No. 1, ¶ 2.
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 9.
[8] *Id.* at ¶ 10.
[9] *Id.* at ¶ 11.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶ 15.
49589

1001, *et seq*.

The Board moves to dismiss Plumbing Contractors' *Complaint* pursuant to Rule 12(b)(1) for lack of jurisdiction on the grounds that Plumbing Contractors lack standing to bring these claims and Rule 12(b)(6) for failure to state a claim upon which relief may be granted as to preemption by ERISA. The Board contends Plumbing Contractors lack standing because they have not sufficiently plead that they "have suffered or will imminently suffer a concrete, particularized injury as a result of the challenged law."[12] Because the Court finds that Plumbing Contractors have failed to demonstrate standing, the Court lacks jurisdiction and does not reach the Rule 12(b)(6) Motion to Dismiss.

## II. LAW AND ANALYSIS

### A. Rule 12(b)(1) Motion to Dismiss

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[13] If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'"[14] The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'"[15]

---

[12] Rec. Doc. No. 18 at 2.
[13] *Crenshaw–Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir.2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001); s*ee also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011); Fed.R.Civ.P. 12(h)(3)).
[14] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)).
[15] *Id.* (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Ramming*, 281 F.3d at 161).
49589

"Article III standing is a jurisdictional prerequisite."[16] If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[17] The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[18] In reviewing a motion under 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[19]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, *i.e.*, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, *i.e.*, the facts in the complaint supporting subject matter jurisdiction are questioned.[20] A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence.[21] In a facial attack, allegations in the complaint are taken as true.[22]

Because the arguments made by the Board relating to standing rely on the allegations asserted in the *Complaint*, it has presented a facial attack on Plumbing Contractors' standing.

---

[16] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (citing *Steel Co.*, 523 U.S. at 101, 118 S.Ct. 1003, and *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir.1989)).
[17] *Whitmore v. Arkansas*, 495 U.S. 149, 154–55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir.1997).
[18] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.
[19] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).
[20] *In re Blue Water Endeavors, LLC*, Bankr. No. 08–10466, Adv. No. 10–1015, 2011 WL 52525, *3 (E.D.Tex. Jan. 6, 2011)(citing *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878–79 (N.D.Tex.1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000)).
[21] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[22] *Blue Water*, 2011 WL 52525 at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.1995)).
49589

## B. Article III Standing

Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies." "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[23] "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."[24]

To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[25] "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending."[26] The United States Supreme Court has reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.[27]

Here, Plumbing Contractors' allegations of injury on the face of the *Complaint* are not "concrete, particularized, actual or imminent." Additionally, the allegations of

---

[23] *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (internal quotation marks omitted); *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (internal quotation marks omitted); see, e.g., *Summers v. Earth Island Institute*, 555 U.S. 488, 492-493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
[24] *Raines, supra*, at 818, 117 S.Ct. 2312; see also *Summers, supra*, at 492-493, 129 S.Ct. 1142; *DaimlerChrysler Corp., supra*, at 342, 126 S.Ct. 1854; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
[25] *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010); see also *Summers, supra*, at 493, 129 S.Ct. 1142; *Lujan*, 504 U.S., at 560-561, 112 S.Ct. 2130.
[26] *Id.*, at 565, n. 2, 112 S.Ct. 2130 (internal quotation marks omitted).
[27] *Whitmore*, 495 U.S., at 158, 110 S.Ct. 1717 (emphasis added; internal quotation marks omitted); see also *Lujan, supra*, at 565, n. 2, 567, n. 3, 112 S.Ct. 2130; see *DaimlerChrysler Corp., supra*, at 345, 126 S.Ct. 1854; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).
49589

"anticipated detriment" to the plumbing industry as a whole are speculative.

The Board argues that Plumbing Contractors "simply made the broad and purely speculative statement that the [plumbing apprenticeship] regulations are detrimental to industry growth" and that Plumbing Contractors failed to include any factual allegations to support this contention.[28] In support of standing sufficient to invoke jurisdiction the Plumbing Contractors cite solely to paragraph 2 of the Complaint,[29] which states:

> Plaintiffs are all plumbing contractors actively performing work in the State of Louisiana and who are duly licensed by the STATE PLUMBING BOARD OF LOUISIANA (hereinafter "PLUMBING BOARD") and the Louisiana State Licensing Board for Contractors. Plaintiffs all employ individuals who are training to become journeyman plumbers and who are directly impacted by the mandatory indentured apprenticeship requirements enforced by Defendants through their service as board members of the PLUMBING BOARD. The foregoing demonstrates that Plaintiffs have a personal stake in the outcome of this controversy so as to ensure that concrete adverseness is present. As such, Plaintiffs have standing to assert claims in these proceedings.[30]

Although the Plumbing Contractors base their standing argument solely on the allegations of paragraph 2, the Court reviewed the entirety of the Complaint for allegations of "concrete, particularized, and actual or imminent; fairly traceable to the challenged action".[31] Paragraph 10 of Plumbing Contractors' *Complaint* explains that the apprenticeship program was always a part of the Louisiana statutory requirements; however, the Board did not strictly enforce the requirements until January 1, 2017.[32] Therefore, apprentice plumbers who were working prior to the strict enforcement period found themselves out of work, presumably unless or until these apprentice plumbers met

---

[28] Rec. Doc. No. 18 at 7.
[29] Rec. Doc. No. 28 at 4.
[30] Rec. Doc. No. 1, ¶ 2.
[31] Note 25, *supra*
[32] Rec. Doc. No. 1, ¶ 10.
49589

the requirements of the apprenticeship program. However, these allegedly out-of-work apprentice plumbers are not parties to this action.[33] Paragraph 11 of the *Complaint* alleges "significant implications" to Plumbing Contractors:

> The indentured apprenticeship requirement has significant implications for plumbing contractors and their employees. Pursuant to Title 40 § 301 of the Louisiana Administrative Code, the apprentice is required to be placed under a written apprenticeship agreement which is required to incorporate the standards of the program. The minimum standards include a term of apprenticeship, a minimum of 144 hours of classroom instruction in technical subjects per year, a progressively increasing schedule of wages which are set by the program sponsor and approved by the State Apprenticeship Council, periodic review of the apprentice's progress, a probationary period and a required supervision ratio. With respect to the required ratio of apprentices to journeymen, LSA R.S. 37:1367(A) provides: 'Direct, constant on-the-job supervision means that a licensed journeyman plumber will supervise apprentices as governed by the Louisiana Workforce Commission.'[34]

Paragraph 12 of the *Complaint* explains that the ratio is 1-1.[35] Plumbing Contractors conclude by asserting:

> The approved apprenticeship programs throughout the state consist of programs sponsored by organized labor unions and two non-union programs, one in Lafayette and one in Baton Rouge. The programs require attendance at classes, regular testing and the payment of semester fees. There is no opportunity for young men and women to enter the plumbing industry unless they live close to the training centers and have the funds to pay for the fees. This mandatory statutory scheme essentially closes the industry to those who do not have access to approved apprenticeship programs.[36]
>
> Louisiana's plumbing industry does not have a sustainable workforce and new entrants into the industry are necessary to perform the plumbing work required. The statutory scheme as enforced by the Plumbing Board is

---

[33] The Court notes with interest that it is a group of plumbing contractors/employers instituting the subject action, not apprentice plumbers themselves. Noticeably absent are apprentice plumbers complaining of burdensome and unfair enforcement of requirements that have rendered individuals unemployed.
[34] Rec. Doc. No. 1, ¶ 11.
[35] Rec. Doc. No. 1, ¶ 12.
[36] Rec. Doc. No. 1, ¶ 15.
49589

detrimental to the growth of the industry.[37]

As set forth, the Complaint alleges an anticipated impact and implications of the enforcement of the apprenticeship program requirements. The Plumbing Contractors allege that they find the requirements burdensome and that, as employers of apprentice plumbers, Plaintiffs fear the impact this may have in the future on the plumbing industry. However, the Court does not find that Plumbing Contractors' allegations sufficiently plead a concrete and particular injury triggering Article III standing. What is the specific injury to the named Plaintiffs? Is the burden of the requirements and the fear of a presumed stunted workforce in the future sufficient? Neither the Board, nor Plumbing Contractors, provided the Court with legal authority answering this inquiry. Arguing that the *Complaint* is too vague and speculative the Board cites *Clapper v. Amnesty International USA*,[38] without any further examination.[39] Plumbing Contractors argue that only a general allegation of injury and its imminence is necessary, relying upon *Lujan v. Defenders of Wildlife*.[40]

In *Clapper*, *supra*, plaintiffs challenged the Foreign Intelligence Surveillance Amendments Act of 2008 (FISA), which allowed the Attorney General and the Director of National Intelligence to obtain foreign intelligence information by authorizing the

---

[37] Rec. Doc. No. 1, ¶ 16.
[38] 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).
[39] Rec. Doc. No. 18 at 6-7.
[40] 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Court acknowledges that Plumbing Contractors highlights *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), for the position that a party seeking injunctive relief from state regulation on the ground that such regulation is preempted by federal law presents a federal question over which federal courts have jurisdiction. Rec. Doc. No. 28 at 4. However, the initial inquiry before the Court on the Rule 12(b)(1) Motion to Dismiss is whether sufficient injury has been alleged such that the Complainants have constitutional standing to proceed. The Court does not reach the issue of preemption if Complainants do not sufficiently plead their injury.
49589

surveillance of certain persons believed to be located outside of the United States. A challenge was brought by "attorneys and human rights, labor, legal, and media organizations" who claimed to communicate with individuals who would be targeted by this surveillance.[41] Specifically, the plaintiffs asserted that there was an "objectively reasonable likelihood" that their communications with their foreign contacts would be intercepted under the Act.[42] The plaintiffs sought injunctive relief and a declaratory judgment that the Act was unconstitutional. The district court found that standing was lacking, and the Second Circuit reversed. The Supreme Court found that there was no standing because there was no showing of a "concrete, particularized, and actual or imminent" injury "fairly traceable to the challenged action; and redressable by a favorable ruling." Simply put, the Supreme Court found the plead injuries to be speculative, failing to establish an impending injury.

*Clapper* originally came before the district court on summary judgment. Unlike here, evidence was offered to show the harm and expense incurred due to the enactment of the Act at issue. Even then, the district court and Supreme Court did not find standing. At the heart of the matter was the speculative nature of the plaintiffs' alleged injury.

Similarly, Plumbing Contractors complain that the enforcement of the apprenticeship program requirements will cause inconvenience, additional expense, a decrease in available plumbers, and an eventual demise to the plumbing industry.[43] These allegations speak to what may occur in the future and are not supported by any factual allegations of real or imminent injury. In *Clapper*, the Second Circuit, reversing

---

[41] 133 S.Ct. at 1140.
[42] 133 S.Ct. at 1141.
[43] Rec. Doc. No. 1.
49589

the district court's ruling, allowed the plaintiffs to establish standing based on fears and anticipated burdens. The Supreme Court reprimanded this finding as it "improperly waters down the fundamental requirements of Article III."[44] "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."[45]

Plumbing Contractors argue that general allegations of injury are sufficient at the 12(b) stage, relying upon *Lujan, supra*. In *Lujan,* the federal act at issue was the Endangered Species Act of 1973. The Secretary of the Interior and the Secretary of Commerce initially promulgated a regulation extending coverage of the act to actions taken in foreign nations, but a subsequent rule limited the geographic scope to the United States and the high seas.[46] "[W]ildlife conservation and other environmental organizations" sought declaratory relief and an injunction, seeking to restore the initial interpretation and scope.[47] The district court dismissed for lack of standing. The Eighth Circuit reversed. Cross motions for summary judgment were brought, with judgment entered in favor of the environmental groups by the district court and affirmed by the Court of Appeals. The Supreme Court held that the plaintiffs did not come forward with sufficient

---

[44] *Clapper, supra*, 568 U.S. at 416.
[45] *Clapper, supra*, 568 U.S. at 416, citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (*per curiam*); *National Family Planning & Reproductive Health Assn., Inc.,* 468 F.3d 826, 831 (C.A.D.C.2006).
[46] *Lujan, supra*, 112 S.Ct. at 2133.
[47] *Lujan, supra*, 112 S.Ct. at 2133.
49589

evidence of imminent injury to have standing.

Although the standing inquiry in *Lujan* was before the Court on a Motion for Summary Judgment, the Supreme Court in *Lujan* observed that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"[48]

The United States Court of Appeals for the Fifth Circuit addressed Article III standing in the procedural context of a Rule 12(b)(1) Motion to Dismiss *Lee v. Verizon Communications, Inc.*[49] In *Lee*, the plaintiffs, representatives of different classes, brought claims against the defendants for alleged violations of ERISA. The claims were dismissed and affirmed by the appellate court. Specifically, one of the representatives of one of the classes of pension plan participants was found to lack standing to sue for fiduciary misconduct pursuant to ERISA. The Fifth Circuit determined that any direct harm to this representative was too speculative. The matter found itself before the Fifth Circuit a second time when, after the plaintiff sought a writ of certiorari to the United States Supreme Court, the matter was remanded to the Fifth Circuit to revisit the issue of standing in light of *Spokeo, Inc. v. Robins*.[50] The Fifth Circuit ultimately reached the same conclusion – the representative lacked standing due to not meeting the injury-in-fact prong.

The representative in *Lee* claimed that he was injured through "losses to [pension]

---

[48] *Lujan, supra*, 112 S.Ct. at 2137, citing *Lujan v. National Wildlife Federation, supra,* 497 U.S. 871 at 889, 110 S.Ct., at 3189.
[49] 837 F.3d 523 (5th Cir. 2016).
[50] *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). See *Lee, supra*, 837 F.3d at 528-529.
49589

Plan assets held on [his] behalf as a direct result of the fiduciary mismanagement of Plan assets in violation of ERISA, and that this invasion of his statutory right to proper management of Plan assets is sufficiently concrete to provide standing."[51] The defendants argued that Article III required allegations to support injury against an individual's payments, not the plan as a whole.[52] Despite detailed pleading of an alleged injury, it was found to be insufficient to meet the requirements of Article III standing.[53]

The Court distinguished statutory standing versus Article III standing, relying on *Lujan.* The Fifth Circuit explained that "Article III standing is distinct from statutory standing, and we decline to undermine this distinction by recognizing the latter as conferring the former. Though the Supreme Court in *Lujan v. Defenders of Wildlife* allowed that the invasion of statutory rights might create standing, *Lujan* addressed constitutional standing arising from *de facto* injury, which is not alleged by a breach of fiduciary duty."[54] The Court concluded that the representative's facial allegations were insufficient to support his constitutional standing.

In line with the findings of the Supreme Court and Fifth Circuit, this Court finds that Plumbing Contractors did not sufficiently plead an injury to meet the standards of

---

[51] *Lee, supra*, 837 F.3d at 544-545.
[52] *Lee, supra*, 837 F.3d at 545.
[53] "The Supreme Court reaffirmed in *Spokeo* that violation of a procedural right granted by statute may in some circumstances be a sufficiently concrete, albeit intangible, harm to constitute injury-in-fact without an allegation of 'any additional harm beyond the one Congress has identified.' However, the Supreme Court also took care to note that 'Congress'[s] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' Rather, '*Article III standing requires a concrete injury* even in the context of a statutory violation. Put differently, the deprivation of a right created by statute *must be accompanied by 'some concrete interest that is affected by the deprivation*.' Thus, *Spokeo* recognizes that at minimum [sic], a 'concrete' intangible injury based on a statutory violation *must constitute a 'risk of real harm' to the plaintiff.*" *Lee, supra*, 837 F.3d at 529, internal citations omitted. (emphasis added).
[54] *Lee, supra,* 837 F.3d at 546.
49589

constitutional standing under Article III.

### III. CONCLUSION

For the written reasons assigned, the Board's *Motion to Dismiss*[55] is GRANTED. Plumbing Contractors have not met their Rule 12(b)(1) burden of demonstrating that they have standing to bring this lawsuit. Therefore, this matter is dismissed without prejudice for lack of subject matter jurisdiction.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>January 22, 2019</u>.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[55] Rec. Doc. No. 18.

49589